## STATE BOARD OF LAW EXAMINERS OF WYOMING v. BROWN

(No. 2063; March 22, 1938; 77 Pac. (2d) 626)

(Rehearing denied May 25, 1938)

44

For the complainant, there was a memorandum of authorities submitted by *Ray E. Lee*, Attorney General; *Thos. F. Shea*, Deputy Attorney General; and *Wm. C. Snow*, Assistant Attorney General, all of Cheyenne, and oral argument by *Mr. Lee*.

For the respondent, there was a memorandum of authorties submitted and oral argument by *Edwin L. Brown* pro se.

PER CURIAM.

This is an original proceeding instituted by the State Board of Law Examiners as complainant

through the Attorney General of the State of Wyoming in this court, for the purpose of procuring the disbarment of respondent, Edwin L. Brown, and the revocation of his license to practice law in this jurisdiction.

Summarized the petition filed herein by the complainant charges that Edwin L. Brown is now and for some time past has been engaged in the practice of law at Lusk, Wyoming; that on or about September 9, 1930, by the judgment of this court, he was suspended from engaging in practice as an attorney before the courts of this state for a period of three years, on account of unprofessional conduct; that thereafter, and while said order of suspension was still operative, he returned to South Dakota, a state where he had originally been admitted to the practice of law and upon whose certificate he had relied to secure admittance to the practice of the profession in this state, and again engaged in the work of an attorney at law in that state; that by an order of the Supreme Court of South Dakota, effective December 13, 1932, he was suspended from such practice for the remainder of the period of suspension imposed by the judgment of this court.

It is also charged that the respondent subsequently commenced the practice of law in South Dakota after the expiration of the suspension period ordered as aforesaid had expired; that thereafter an original proceeding was brought in the Supreme Court of South Dakota for respondent's disbarment as an attorney at law in that state, which culminated in a judgment rendered by that court January 11, 1936, that respondent's license to practice law in the State of South Dakota be revoked, that his name be stricken from the roll of licensed attorneys therein, and that he be absolutely disbarred from further practicing as an attorney at law in any of the courts of that commonwealth. An exemplified copy of the proceedings, including this

judgment of disbarment, was duly filed herein with complainant's petition.

The plaintiff further charged in its petition that in an action in the District Court of the United States for the District of Wyoming, entitled No. 1842, Walter F. Sprengel, Trustee, Plaintiff, v. Edwin L. Brown, Defendant, decided January 15, 1930, it was found that respondent had collected a large sum of money due a client for which respondent was trustee, and had failed to pay or account for the same, for which he was indebted to said plaintiff in the sum of $1,307.75, and a decree for the recovery of that amount, as well as a return of the accounts and notes which he held for said client, together with costs, against the said Edwin L. Brown, was duly entered, and that this decree remains unsatisfied.

Complainant requested this court, in view of these facts thus presented, to assume original jurisdiction and dispose of the matter. It was prayed that the order of this court be made requiring the said Edwin L. Brown to show cause, if he could, why his license to practice law in this state should not be revoked.

The order sought as aforesaid was issued, duly served upon the respondent, and he has filed a verified answer and return admitting that he is now engaged in the practice of law in this state, challenging the jurisdiction of this court, admitting that the several orders of suspension and the judgment of disbarment mentioned in the petition for same were entered, and incorporating allegations undertaking to relitigate the fact issues involved in the disbarment proceedings had against him in the State of South Dakota. With reference to the case disposed of in the Federal Court and referred to in complainant's petition, as stated above, he admits a decree of the character alleged was entered. He states that it involves the facts upon which the order of suspension heretofore made by this court

was made, and, also, that by reason of the said decree the relation of debtor and creditor arose. He does not deny specifically that the decree remains unsatisfied.

The Attorney General of Wyoming has filed a "Motion for Judgment," wherein he alleges "that the return of the defendant to the order to show cause filed herein, does not state facts sufficient to constitute a defense or cause for denying the prayer of complainant's petition," and also asserts that the admissions contained in respondent's answer, together with the exemplified copy of the proceedings before the Supreme Court of South Dakota and on file herein, as stated, above, constitute sufficient cause for his disbarment in this state.

In Mitter v. Black Diamond Coal Co., 28 Wyo. 439, 206 Pac. 152, it was indicated,

"It is well recognized that the name or title of a pleading or motion may be disregarded if its contents make its purpose so clear that no one is misled."

As the purpose of the motion filed by complainant is manifestly that of a demurrer to the answer and return made by respondent, with prayer for judgment thereon, we shall so regard it.

Disbarment proceedings are not exactly either criminal or civil in nature, but partake of the character of special proceedings, disciplinary and summary in form, necesarily incident to the inherent power of courts to control properly their own affairs. They are not litigation between adverse parties, but simply the exercise of jurisdiction over an official whose authority to serve the public and the courts issues out of the courts themselves. Such proceedings cause an inquiry into his conduct not for the purpose of applying a remedy for a wrong done, but only for the maintenance of the purity and dignity of the courts, by removing an officer whose fitness to function has been questioned

and whose unfitness shall be established. When they result in disbarment, the official affected is, of course, punished thereby, but the intrinsic nature of the whole matter involves a determination in the public interest whether the person whose conduct is the subject of the inquiry should be permitted to practice the profession of law. Bar Association of Boston v. Casey, 211 Mass. 187, 97 N. E. 751, 39 L. R. A. (N. S.) 116, Ann. Cas., 1913A, 1226; In Re Stern, 12 N. E. (2d) 100; Fairfield County Bar v. Taylor, 60 Conn. 11, 22 Atl. 441, 13 L. R. A. 767; State ex rel. Spillman v. Priest, 123 Neb. 241, 242 N. W. 433; 7 C. J. S. 770-771, Sec. 28, and authorities cited.

All members of the legal profession know that when they are admitted to practice law they assume certain obligations and duties which properly met must conform to certain standards in honesty and fair dealing as concerns their clients, the courts, the profession, and the public at large. State ex rel. Spillman v. Priest, supra. It goes without saying that because of the very nature of a lawyer's work these standards should not be and are not low. In this state, before being admitted to practice, the applicant must take an oath that he will, among other things, "faithfully and honestly" discharge the duties of an attorney and counselor at law. Sec. 9-113, W. R. S., 1931.

Lawyers seeking admittance to practice in the courts of this jurisdiction and coming from other states, must rely upon their original certificates of admission from those states, and satisfy this court, among other requirements, that they are "still in good standing" as attorneys in the courts of such other states or territories and that they are persons "of good moral character." Section 9-109, W. R. S., 1931. These statutory provisions were in force when respondent was admitted to practice in this state, just as they are at present.

With the foregoing general observations in mind, we pass to a consideration of the questions raised by the matter before us. Respondent contends that this court is powerless to act herein and that its jurisdiction in proceedings of this character has been limited by Sections 9-116 to 9-120, inclusive, W. R. S., 1931, which, summarized briefly, authorize proceedings in disbarment to be in the charge of and conducted by the State Board of Law Examiners before the district courts of the state when disputed questions of fact arise which must be determined and testimony is required to be taken and preserved. Respondent's contention is without merit for a number of reasons.

It is generally held that appellate courts authorized to admit attorneys have, independently of statutory source, inherent power by original proceedings to suspend or disbar attorneys for unprofessional conduct. 7 C. J. S. 730-732, Section 18, with cases and authorities cited; People ex rel. Chicago Bar Association v. Goodman, 366 Ill. 346, 8 N. E. (2d) 941; State Bar Commission ex rel. Williams v. Sullivan, 35 Okla. 745, 131 Pac. 703, 707. Aside from this it was pointed out in State Board of Law Examiners v. Phelan, 43 Wyo. 481, 5 Pac. (2d) 263, after a review of the several Sections of the law last above mentioned, that, "It may, perhaps, properly be said that the whole of the proceedings in the district court are advisory to this court, for it is on the record of those proceedings that we must render the judgment or remand the case * * * We need not hold that the procedure prescribed by the law of 1925 is exclusive."

It is quite apparent from a perusal of Section 9-119, W. R. S., 1931, that what shall be done in a disbarment proceeding, so far as relates to its final disposition, is left entirely in the control and discretion of this court. Additionally, it may be noted that Section 9-114, W. R. S., 1931, as it is material here, provides:

"The Supreme and district courts may respectively revoke or suspend the license of any attorney or counselor at law to practice therein, for any of the following reasons:

\* \* \*

"3. Neglecting or refusing on demand to pay over money in his hands due or belonging to a client.

\* \* \*

"5. For the wilful violation of any of the duties of attorney or counselor."

This Section of the law has been operative in this jurisdiction since Territorial days and throughout Statehood to the present time, and previously appeared as Section 1196 Wyoming Compiled Statutes, 1920. It is significant that while Chapter 51 of the Session Laws of Wyoming 1925, which is the source of Sections 9-116 to 9-120, inclusive, W. R. S., 1931, aforesaid, by Section 6 of said Chapter, repealed, through specific mention thereof, a number of Sections of the compilation of 1920 laws of this state, to-wit, Sections 1198 to 1202, inclusive, which dealt with the subject of disbarment of attorneys at law, it did not refer to or disturb Section 1196 aforesaid. The statutes presenting this situation may very well invoke the rule stated in 59 C. J. 909-10, Section 512, thus:

"Where a statute expressly repeals specific acts, there is a presumption that it was not intended to repeal others not specified. In such case there is an implied approval of the statutes not specified, as well as evidence of an intention to leave them undisturbed, and the doctrine of implied repeal does not apply."

So evidently thought the committee in charge of the revision of our state statutes for the year 1931, and we have no doubt correctly.

Sections 9-116 to 9-120, inclusive, above mentioned, are simply supplementary to and in aid of the general power of this court, which is declared in Section 9-114, W. R. S., 1931, supra. This court does not possess

already established the facilities for taking testimony and preserving it by record, as do the district courts. Under such circumstances, it facilitates the disposition of matters of this character; when controverted questions of fact arise and must be determined by a consideration of testimony relating thereto, that the matter should be presented to a district court. But when, as in the instant case, sufficient conceded facts appear to invoke the immediate action of this court, no good reason is apparent why the matter should not be presented and disposed of here. Where so-called state bar acts have been passed placing the power of disbarment in the hands of a "board of governors" or "commissioners;" it has been held that this legislation did not deprive the courts of power to act themselves in such matters. See Dignan v. State Bar of Nevada, (Nev.), 70 Pac. (2d) 774; McCord v. State ex rel. Allen, 220 Ala. 466, 126 So. 873.

In Dignan v. State Bar of Nevada, supra, it was said:

"It is our opinion that this court has always had the power to reprove, censure, or reprimand attorneys for professional misconduct, as well as to disbar or suspend them from practice. It is unnecessary to cite the numerous decisions in other states on this question as this court, long before Nevada had a State Bar Act, expressly recognized its power to reprimand as well as to disbar or suspend from practice. In re Breen, 30 Nev. 164, at page 183, 93 P. 997, 17 L. R. A. (N. S.) 572."

A detailed statement of the facts and circumstances upon which the previous orders of this court and the Supreme Court of the State of South Dakota were made is to be found in the official reports of their decisions, viz.: State Board of Law Examiners v. Brown, 42 Wyo. 108, 290 Pac. 1013; In re Brown, 60 S. D. 628, 245 N. W. 824; In re Brown, 64 S. D. 87, 264 N. W. 521. No useful purpose would be accomplished by again

reviewing them. It is sufficient to say that they show a course of conduct on the part of the respondent, Edwin L. Brown, over a period of years that cannot be characterized in any other manner than extremely reprehensible and as reflecting seriously upon his moral character. They establish that this conduct was persisted in by him despite repeated applications of warning disciplinary measures administered by both appellate courts.

In the case of State ex rel. Sorensen, Attorney General, v. Scoville, 123 Neb. 457, 243 N. W. 269, it was held that the conviction of an attorney in a federal court of a felony or misdemeanor involving moral turpitude as defined by law was conclusive evidence warranting disbarment in the Supreme Court of the State of Nebraska, and the court said in the course of its opinion:

"In an early case, this court held: 'In granting a license to practice law, it is on the implied understanding that the party receiving it shall in all things demean himself in a proper manner, and abstain from such practices as cannot fail to bring discredit upon himself, the profession, and the courts.' State v. Burr, 19 Nebr. 593, 28 N. W. 261, 262.

"In order to retain license to practice law, an attorney must abstain from conduct which establishes a depreciation of good moral character. It was obviously the legislative intent and recommendation that those who exercise the prerogatives of an attorney should be persons of good moral character. It would avail nothing from a practical standpoint to insist upon good moral character at the time of admission to the bar, if we failed to take cognizance of moral relapses thereafter."

To the same effect are the cases of In re Minner, 133 Kan., 789, 3 Pac. (2d) 473, and In re Needham, 364 Ill., 65, 4 N. E. (2d) 19. In the Needham case, the court in concluding its opinion remarked:

"This court will not go behind the record of the respondent's conviction. It was conclusive evidence of the respondent's guilt. People v. Meyervitz, supra (278 Ill., 356, 116 N. E. 189) ; People v. Gilmore, supra (214 Ill. 569, 73 N. E. 737, 60 L. R. A. 701) ; People v. George, supra (186 Ill. 122, 57 N. E. 804). It disclosed sufficient cause for the respondent's disbarment. The recommendation of the commission is adopted, and the respondent is disbarred."

See also In re Ulmer, 268 Mass. 373, 167 N. E. 749; In re Barton, 54 Fed. (2d) 810.

Where an attorney had been admitted to practice law in Indiana upon presentation of a certificate admitting him as an attorney at law in the State of Kentucky, when as a matter of fact he had theretofore been disbarred in the latter state, this resulted, in the case of In re McDonald, 200 Ind. 424, 164 N. E. 261, in the affirmance of an order of a subordinate court rescinding a previous order admitting him to practice law in the State of Indiana, the court saying:

"The use of the Kentucky license before the committee had the practical effect of a representation that appellant was then a member of the bar of Kentucky in good standing, when in truth he was not, and the withholding of any explanation concerning his disbarment in Kentucky, coupled with his affirmative acts, has been held sufficient in many jurisdictions to show inexcusable deception practiced upon the court, and a sufficient cause for revoking the order admitting him."

The case of In re Leverson, 195 Minn. 42, 261 N. W. 480, presents these facts: The respondent there was admitted to practice law in North Dakota in 1905 and in Minnesota in 1920, by virtue of his North Dakota license. He practiced law in both states. In 1926 he established his residence in Wisconsin and was in due course admitted to practice law in that state. Thereafter proceedings were instituted in the Supreme Court of Wisconsin through its Board of State Bar

Commissioners, in which it was charged that respondent was guilty of embezzlement and other serious acts of misconduct. He filed no answer and made no appearance in that proceeding. On May 31, 1932, the court last mentioned entered its order of disbarment against him. Thereafter the State Board of Law Examiners of Minnesota instituted proceedings in the Supreme Court of that state for respondent's disbarment there. An order requiring him to show cause why he should not be disbarred was issued thereon and duly served upon him. In response to this, he filed in the matter a verified answer denying that he was guilty of the misconduct charged, seeking to relitigate the issue, and he charged, also, that he was not validly disbarred in Wisconsin for the asserted reason that a copy of the complaint and court order requiring his appearance and answer to the filed charges were not served upon him. The exemplified record of the proceedings of the Wisconsin court presented to the Supreme Court of Minnesota disclosed that a copy of the complaint and the order to show cause were served upon respondent by leaving them with his wife at his usual place of abode in Wisconsin, diligent search failing to find him in the county or in that state. Ordering a revocation of respondent's Minnesota license to practice law, the court said:

"The judgment of disbarment entered by the Supreme Court of Wisconsin should be given full faith and credit, unless the procedure therein was wanting in due process or that the Supreme Court thereof committed a palpable error in ordering the disbarment. Selling v. Radford, 243 U. S. 46, 37 S. Ct. 377, 61 L. Ed. 585, Ann. Cas. 1917D, 569; Danforth v. Egan, 23 S. D. 43, 119 N. W. 1021, 139 Am. St. Rep. 1030, 20 Ann. Cas. 418; 6 C. J. p. 614. Whether respondent was properly served in Wisconsin and had knowledge of the proceedings against him therein is not for this court to say. The exemplified record, as stated above, indicates that service of process was duly made, and

there is nothing to indicate the commission of palpable error. It is not within the province of this court to investigate matters outside that record."

In the case now before this court, we shall take as established the facts found by the Supreme Court of South Dakota in connection with its final judgment of disbarment. Respondent was accorded full opportunity to, and did, litigate the issues tried in that proceeding. There was due process of law, and there was no clear error in ordering the disbarment that we can see. The facts thus before us are amply sufficient even if we were to disregard the respondent's previous history in this jurisdiction, which in a matter of this character we cannot and ought not to do, to make clear that respondent is unfit to practice the profession of law in this state. As said by the Supreme Court of Colorado in People ex rel. Colorado Bar Association v. Lindsey, 86 Colo. 458, 283 Pac. 539:

"The respondent's oath of office as an attorney and counselor at law is not only binding here in Colorado but everywhere. He cannot put it aside or renounce it at pleasure. It abides with him at all times and places, and he will be held responsible to this court for his misconduct as an attorney so long as his name continues on the roll; nor can he put himself in a position which will place him beyond the inherent power of this court to purify the bar of its unworthy members, and to keep its roster clean."

If respondent were applying to this court for the first time upon his present standing as an attorney in South Dakota, we should undoubtedly decline to admit him here under the provisions of Section 9-109 W. R. S., 1931, supra. Why he should be permitted nevertheless to return to this jurisdiction and continue the practice of law after he has lost the standing upon which this court originally issued to him authority to act as an attorney at law in Wyoming, we are unable to perceive. We are obliged to conclude that inasmuch as respondent has repeatedly been guilty of the wilful

violation of the duties of an attorney and counselor at law, there is but one course left open to us, which is to adjudge that motion of the Attorney General should be sustained and that the name of respondent, Edwin L. Brown, be stricken from the roll of attorneys authorized to practice law in this state and that his license in that behalf heretofore issued should be revoked.